# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

CHRISTOPHER SCHAEFFER,

       Plaintiff,

and

AMERICAN MOTORISTS INSURANCE          Case No. 04-C-159
COMPANY,

       Involuntary Plaintiff,

v.

VALSPAR CORPORATION, and
ENGINEERED POLYMER SOLUTIONS, INC.,

       Defendants.

## ORDER GRANTING MOTION TO COMPEL DISCOVERY

Plaintiff claims that he contracted occupational asthma as a result of his exposure to an isocyanate compound contained in a product which the defendant's predecessor, Lilly Company, sold to plaintiff's employer, Professional Plating, Inc. The substance, referred to as 680 Resin, was originally developed by Glidden in the 1970's and first marketed in 1981. R.G. Garner was employed by Glidden at the time. Garner has been identified as the person in charge of the overall development of the 680 Resin.

Plaintiff contends that the 680 Resin unblocks at temperatures in excess of 300 degrees Fahrenheit. While employed at Professional Plating, part of plaintiff's job involved the heating of

substances containing the 680 Resin for testing purposes. It is this testing process that plaintiff

alleges caused the exposure to the isocyanates that led to his occupational asthma.

Valspar admits that the isocyanate polymer in the 680 Resin unblocks at temperatures in

excess of 300 degrees Fahrenheit. However, Valspar's position is that any free isocyanates that

become unblocked react immediately with other components in the 680 Resin, thereby rendering

the isocyanates harmless to human health.

In an effort to discover the basis for Valspar's position, plaintiff propounded interrogatories

and requests for production of documents directed to Garner's knowledge at the time of the

development of the 680 Resin. Specifically, plaintiff's interrogatory number 12 asks defendants to:

> identify every study, test and other information upon which Glidden or Archie
> Garner relied, prior to the first marketing of the product in 1981 (see Garner depo.
> p. 35), in reaching the conclusion that any isocyanate in the Product which becomes
> unblocked reacts completely with other components in the resin, thereby preventing
> the release of free isocyanates.

Plaintiff also requested "copies of all documents consisting of or containing any studies, test results

or other information upon which Glidden or Archie Garner relied. . ." in reaching this conclusion

(Request #34), and those upon which it currently relies to support its position (Request # 35).

The defendant's responses to interrogatory number 12 and request numbers 34 and 35 were

originally due on March 10, 2005. Defendants requested and received an extension of time in which

to respond to the discovery request until March 23, 2005. Defendants responded to the interrogatory

within the agreed upon time. In their response, however, defendants first objected to the

interrogatory on the ground that it misstated Dr. Garner's testimony as to whether the isocyanate

polymer in the 680 Resin would unblock. The defendants further objected to the interrogatory on

the ground that it was overly broad and unduly burdensome because it would require Dr. Garner and

other people working at Glidden to recall and identify not only the literature upon which they relied in coming to their conclusions, but also all other literature and documents, relating otherwise to polymer chemistry, theory and application , which has long been published in the scientific literature and which is available as readily to plaintiff, plaintiff's counsel and presumably plaintiff's experts as to Valspar. The defendants then responded by stating that they were unable to identify and locate all of the literature upon which Dr. Garner and other Glidden employees relied. However, defendants did identify twenty-two scientific articles as being documents upon which they relied in 1981, as well as the references cited in the footnotes of those twenty-two articles. In responding to requests for production number 34 and 35, defendants produced the twenty-two articles referenced in answer to interrogatory number 12.

Dissatisfied with defendant's response, plaintiff has filed a Motion to Compel. Plaintiff argues first that defendant's objections must be stricken because they are untimely. Plaintiff argues that, having sought an extension of time to respond to the discovery request, the defendant's have waived any right to enter an objection.

This argument is easily disposed of. By seeking and obtaining an extension of time from the plaintiffs to respond, defendants avoided any waiver of their right to object. The extension was not qualified and therefore included the right to respond either by pointing out defects in the request or by providing the information required. Accordingly, I reject plaintiff's arguments that defendants have waived their right to object.

Turning to the substance of the objections, I do not find that the discovery requests are over broad. It is true that they are broad. They request all studies, test results and other information upon which the defendants relied or currently rely. It may be, as defendants point out, that it is unlikely

3

that Dr. Garner or any other employee specifically recalls all of the studies, tests and other information upon which they relied given the period of time that has elapsed. The fact that the interrogatory may be difficult to answer, however, does not make it over broad. Dr. Garner is free to state that he does not recall all of the information upon which he based his opinion. He is also free to refer to his general knowledge of chemistry and those principles that specifically apply to the question at issue. What the discovery requests are directed at, however, are clearly the specific studies or tests that he is able to recall and upon which the conclusions reached regarding the bonding characteristics of isocyanates in Resin 680 were based. Given the allegations in the case, the requested information is discoverable.

Notwithstanding their objection, the defendants did provide answers to the discovery requests. Plaintiff complains, however, that the answers provided by defendants are non-responsive and evasive. Specifically, he argues that by including the footnotes to the articles which were provided, Dr. Garner claims to have relied on over 25,000 articles. As both parties concede, it is unlikely that Dr. Garner, or anyone else employed by the defendants, read that many articles. Defendants contend, however, that plaintiff did not limit his request to studies or articles Dr. Garner had read, but asked for all studies or articles upon which Dr. Garner or anyone else at Glidden had relied. Given the breadth of the request, defendants contend their response was proper.

I disagree. Plaintiff's discovery requests, reasonably read, are directed to the scientific support upon which the defendants relied, and rely now, for a specific proposition relevant to his case; namely, that when it is heated above 300 degrees, Resin 680 does not release isocyanates into the atmosphere. This is not a request for the entire body of knowledge concerning isocyanate and urethane chemistry. It is a request for the specific tests, studies or information upon which the Dr.

Garner or Glidden relied for a fairly narrow proposition. To the extent a citation in an article on the issue does not support this proposition, it is not responsive to plaintiff's request and should not have been included in the response. By including all footnoted material in their response, defendants effectively thwarted plaintiff's attempt discover the scientific basis for their contention that Resin 680 is not the cause of his injury.

Defendants argue that Interrogatory 12 calls for an impossible task. They claim that "to fulfill plaintiff's requests and find all of the information Dr. Garner and Glidden relied upon back then, Valspar would have to undertake a massive hunt through the world's isocyanate and related urethane chemistry literature, copy all that is possibly relevant and ask Dr. Garner and unnamed Glidden employees which of the found 'information' they relied upon prior to 1981." Def.'s Br. In Opp. at 2. Defendants note that "[t]he memory fades over 24 years and it is now impossible for Dr. Garner to recall every piece of information consulted a quarter century ago." *Id.*

Defendants exaggerate what is called for. They are not required to search all scientific literature on the issue. They are only asked to identify those studies, tests or information on which Dr. Garner and Glidden relied. If Dr. Garner doesn't recall all of the tests, studies and information he and other Glidden employees relied on to support the contention that isocyanates are not released from Resin 680, he can say so. As long as a reasonable effort to recall or locate such information has been made, a lack of recollection can be a proper answer. Fed. R. Civ. P. 26(g)(1). Of course, the answer must be supplemented as further information becomes available. Fed. R. Civ. P. 26(e). But difficulty recalling does not justify throwing everything into one's response but the proverbial kitchen sink.

I conclude that plaintiff's motion should be granted and defendants should respond to

5

Interrogatory Number 12 as I have construed it above. In responding to plaintiff's requests to produce, they should also indicate which studies, tests or information they relied on prior to marketing the product and which they currently rely on for their contention that isocyantates are not released from Resin 680, to the extent they can recall. With respect to plaintiff's fear that defendants will "bushwhack him" by supplying articles or studies at trial that have not been previously disclosed, I note that this court has the authority to prohibit the admission at trial of evidence that reasonably should have been provided in response to discovery requests. Both parties should be mindful that the court will exercise that authority if information requested in discovery is wrongfully withheld.

Accordingly and for the reasons set forth, the plaintiff's Motion to Compel is granted, and defendants shall serve the plaintiff with a new response to Interrogatory Number 12 and Request Numbers 34 and 35 on or before June 23, 2005.

**SO ORDERED**.

Dated this 2nd day of June, 2005.

s/ William C. Griesbach
WILLIAM C. GRIESBACH
United States District Judge

6